Filed 4/4/23 In re AH. V. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re AH. V. et al., Persons Coming Under the Juvenile Court Law. | B314507, B317268 (Los Angeles County Super. Ct. No. 17CCJP00988C-G) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MICHAEL V., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge. Affirmed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

In these consolidated cases, appellant Michael V. (father) appeals from two orders: the order of July 2021 in which the court denied father's request to have the children returned to his care, additional family reunification services, authorization that the children attend meeting at father's temple and that a temple member serve as a visitation monitor; and the order of December 2021 that terminated the parental rights of appellant and mother, Christy D. (mother). The appeal involves five children: Ah. (born 2013), Asa. (born 2014), twins Am. and Asi. (born 2016), and Mi. (born 2019).

Father challenges the order terminating his parental rights to the five children, asserting that the finding of adoptability made during the December 2021 hearing was nullified by events that occurred after the hearing. We disagree and affirm both orders.

## BACKGROUND
**Detention and section 300 petition—Ah., Asa., Am., and Asi.**

In October 2017, the Los Angeles County Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code section 300, subdivision (b),[1] on

---

[1] All further unattributed statutory references are to the Welfare and Institutions Code.

2

behalf of Ah., Asa., Am., Asi., and mother's two older children, D. and Ma.,[2] alleging that the parents placed the children at risk of serious physical harm when they transported four of the children in the back of a padlocked U-Haul truck without appropriate ventilation, car seats, seatbelts, or water, when the family moved from Nevada to California in September 2017.

The petition further alleged that mother's mental and emotional condition, resulting in her involuntary hospitalization in August 2017, placed the children at risk of harm.

On October 26, 2017, a removal warrant was obtained, and the children were removed from mother after one of them disclosed mother had pushed him down the stairs and struck him with a belt. The juvenile court detained the children from both parents on October 31, 2017, and ordered monitored visits for both parents.

DCFS filed a first amended petition on November 21, 2017, alleging that mother's physical abuse of the same child had placed him and his siblings at risk of harm.

**Adjudication hearing—Ah., Asa., Am., and Asi.**

At the March 20, 2018 adjudication hearing, the juvenile court sustained an amended petition, declared the children dependents of the court, and removed them from parental custody.[3] The court accorded both parents family reunification services and monitored visits.

---

[2]     D. and Ma. are not subjects of this appeal and have different fathers from the five children in this case.

[3]     D. had been previously dismissed from the petition because he had turned 18. The court removed Ma. from mother and placed him with his father.

**Detention, section 300 petition, and adjudication hearing regarding Mi.**

On April 1, 2019, DCFS filed a section 300 petition on behalf of infant Mi. Though it had obtained authorization from the juvenile court to remove the baby from the parents, DCFS was unable to do so because the parents were uncooperative and Mi.'s whereabouts were unknown.

Mother was present at the April 2, 2019 detention hearing but father was not. The juvenile court found a prima facie case for detaining Mi., issued a protective custody warrant for him, and accorded the parents monitored visits. DCFS located and detained Mi. on May 3, 2019.

**Prior appeal concerning Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.)**

Father and mother challenged the orders that established dependency jurisdiction over Mi., his removal of him from parental custody, and continued the out-of-home placement of Ah., Asa., Am., and Asi. The sole issue raised in the prior appeal was whether there had been compliance with the inquiry and notice requirements of the ICWA and related California law.

The children's mother initially reported possible Cherokee ancestry. Throughout the case, father identified an ever-expanding list of Indian tribes in which the children may have existing or future membership, including Apache, Cherokee, Blackfeet, Nanticoke, Lenni-Lenape, Califa Indian, Siksika, Chumash, and the El/Bey clan. DCFS investigated and provided notice to the tribes. The juvenile court, after receiving the tribes' responses, found there was no reason to know the children were Indian.

We affirmed the juvenile court's ICWA findings based on substantial evidence and held that both the juvenile court and

DCFS had complied with ICWA's inquiry and notice requirements. (*In re Ahnyia V.* (May 13, 2020, B298852) [nonpub. opn].)

**Reunification Period**

Reunification efforts continued throughout 2019 and 2020, during which the children were placed in multiple homes. The children were initially placed with Ms. B. Each of the children received physical examinations, and no medical issues were detected.

Father, a self-identified Moor, stated he would not cooperate with the police, court, or government officials, citing their lack of jurisdiction over the Moors. Despite these statements, father visited the children and participated in some services. At the June 19, 2018 progress hearing, the court granted DCFS discretion to expand father's visits with the children if it found his home satisfactory.

Ah. was seen at a clinic due to her below-average weight, and, after being on a special diet, she gained some weight. Asi. was diagnosed with asthma and prescribed albuterol and a nebulizer. No other medical concerns were noted for the children. Ah. adjusted well to kindergarten and enjoyed school. Asa., Am., and Asi. were enrolled in childcare and thriving.

The caregiver reported the children's mental health services were terminated due to a lack of funding and requested the children be reconsidered for services. The children were assessed and found to be ineligible for the developmental disability services provided by the Regional Center of the Department of Developmental Services (Regional Center).

At the six-month hearing on November 6, 2018, the court found father to be in substantial compliance with his case plan and mother to be in partial compliance with hers. DCFS was

ordered to provide the parents with continued reunification services and to expand father's visits to a minimum of 10 hours of unmonitored visits per week.

DCFS was not able to place the children in a single home and, as a result, Ah. and Asa. were placed in one home; Am. and Asi. were placed in another; and after Mi. was detained, he was placed in a third.

During the reunification process, DCFS expressed concern that father had not cooperated with DCFS's efforts to assess Mi. and that his home smelled of marijuana during his unmonitored visits with the children.

After March 29, 2019, father stopped communicating with DCFS and no longer visited the children. Father stated he was not ready to have any of the children returned to his care.

Mother moved to Illinois and remained there for the remainder of the proceedings.

At the one-year hearing, the juvenile court terminated mother's reunification services as to Ah., Asa., Am., and Asi. Reunification services continued to be offered to mother for Mi. and to father for all of the children.

The children were then placed together in a single home with K.T., who was identified as a family friend and the children's godmother. DCFS expressed concerns about the placement and K.T.'s ability to properly care for the children, particularly after it was disclosed that K.T., father and another woman were in a polyamorous relationship. There was concern that K.T. was permitting father unauthorized access to the children.

While in K.T.'s care, the children continued to receive therapy and treatment. Ah., who liked school and was developmentally on target, was assessed and determined not to

6

need therapy as there were no reported significant challenges in the home, school, or social setting. Asa., always happy and in a good mood, was referred to the Regional Center because he was borderline in motor and personal skills. Asi., who was not yet of school age and not receiving therapy, was using a nebulizer and inhaler for asthma and had been referred to the Regional Center because her speech development was delayed. Am. had trouble ambulating, and Mi. was not meeting his developmental milestones, so they too were referred to the Regional Center.

DCFS then reported father wanted the children to be removed from K.T. because she was not following their religion's laws. Instead father wanted them placed with Brother M. El. from his temple. The Regional Center was unable to assess the four children referred for services because father said that there was nothing wrong with his children, and he refused to consent to assessments.

At the February 27, 2020 hearing, the court terminated the reunification services provided to father for all the children and to mother for Mi. Also, the children needed to be placed in new homes because K.T. was giving father the foster care funding and allowing him unlimited access to the children. Ah. and Asa. were placed in one home and the three younger children were placed in Ms. G.'s home.

Ms. G. reported that the children were adjusting well to her home and bonding with her. She and her husband, Mr. G., were interested in adopting all the children, and, as a result, the two older children, Ah. and Am., were also placed with her.

Asa., Am. and Asi., had been accepted by the Regional Center, and it was reported that the children liked living with Mr. and Ms. G. and appeared comfortable with them.

During this period of supervision, father and mother had no in-person visits with the children. While awaiting the hearing to determine parental rights, father's counsel was granted leave to withdraw. The court appointed new counsel over father's objection, as father did not complete the necessary waiver to proceed in propria persona.

**Section 366.26 hearing**

The hearing to determine parental rights was held on December 8, 2021. Ah. was eight, Asa. was seven, Am. and Asi. were five, and Mi. was three. Father argued the existence of the beneficial parental relationship that mother joined. Children's counsel and DCFS asked the court to terminate parental rights.

Father testified that he called the children three times a week and claimed they were excited to see him when they arrived for in-person visits.

Asa. testified that during the phone calls father would repeatedly ask if he wanted to live with father. Asa. replied that he did not want to live with father and that he wanted to be adopted.

Ah. testified that father had not called the children until August 2021, four months before the hearing. She added that she did not like talking to father on the phone because he would repeatedly ask if she wanted to live with him. When asked, she replied that she did not want to live with father and that she wanted to be adopted.

The juvenile court found that the beneficial parental relationship had not been established with the children due to the parent's failure to make regular visits during the pendency of the case. The juvenile court also found that the children did not have a significant bond with father because they testified that they would not be sad if they never saw father again.

The juvenile court also found, by clear and convincing evidence, that all the children were generally and specifically adoptable and thus terminated parental rights, freeing the children for adoption. The current caregivers were designated the prospective adoptive parents.

Father and mother filed timely appeals: father in B314507 and mother in B317268. We granted father's motion to consolidate the appeals on March 17, 2022, and ordered all future submissions to be made in B314507. Mother's appeal was dismissed on March 1, 2022, at her request.

In March 2022, the caregivers provided notice that they no longer could be adoptive parents. The children were then placed with Ms. A., but, due to safety concerns regarding stairs in her home, Ah. and Asa. were then placed with Ms. S., and Am., Asi., and Mi. were placed in a different home. Subsequently, due to concerns about their asthma, Asi., Am., and Mi. were relocated with Ms. W.

Asa. is developmentally on target and receiving medication for hyperactivity and impulsivity. He has been referred to Intensive Field Capable Clinical Services through the Los Angeles County Department of Mental Health. Ah. is developmentally on target and has been practicing relaxation and mindfulness coping skills. Her current caregiver is assisting her with her emotional needs. Additionally, Asa. and Ah.'s caregiver has expressed interest in adopting them, and the children have also expressed a desire to be adopted by their caregiver.

Asi. is doing well and is scheduled to receive mental health services for fighting and arguing with Am., her twin sibling. Am. has developmental delays and is extremely hyperactive and distractible. He has been referred to outpatient mental health services.

9

Mi. is not in school and has no urgent mental health concerns. His current caregiver is interested in obtaining legal permanency for him.

The May 25, 2022 report indicates Ah., Asa., Am., and Asi. have had eight placements, and Mi. has had seven.

## DISCUSSION

## I. Father waived all grounds other than adoptability

Father appeals from the December 2021 findings and orders terminating his parental rights, as well as the findings and order at the review hearing in July 2021. He provides argument, however, only concerning the children's adoption prospects.

"'"'Contentions supported neither by argument nor by citation of authority are deemed to be without foundation, and to have been abandoned.' [Citation.]" [Citation.] Nor is an appellate court required to consider alleged error where the appellant merely complains of it without pertinent argument. [Citation.] Since [the appellant] does not address the issue, we treat it as abandoned and comment no further.'" (*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1480.)

Here, father did not provide pertinent argument on any findings or orders at the July 2021 hearing and did not offer argument on anything from the December 2021 hearing, except the finding of adoptability. Consequently, we consider father's appeal from all other issues abandoned, and we limit our review to the finding that the children were adoptable.

## II. Applicable law and standard of review

Father argues the finding the children were generally and specifically adoptable is not supported by sufficient evidence, and

their ages and disabilities make them unlikely to be adopted. He also requests we take judicial notice of the fact the children are no longer placed with Mr. and Ms. G. to support his argument that they were not specifically adoptable.

We granted father's request for judicial notice on October 2, 2022, and took notice of the facts in minute orders and reports showing the children were no longer placed with the G.'s and had been placed in two separate homes. We also granted father's motion to take additional evidence under Code of Civil Procedure section 909.

The question of whether a dependent child is likely to be adopted "focuses on the child rather than on the prospective adoptive family." (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1650 (*Sarah M.*).) A juvenile court may terminate parental rights "only if it determines by clear and convincing evidence that it is likely the child will be adopted within a reasonable time." (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1060 (*Carl R.*); see § 366.26, subd. (c)(1).) When determining adoptability, the court must consider whether the child's "age, physical condition, and emotional state" will make it difficult to find someone willing to adopt the child. (*Sarah M.*, at p. 1649.)

"Usually, the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor." (*Sarah M., supra*, 22 Cal.App.4th at pp. 1649-1650.) However, if a child's age, poor physical health, physical disability, or emotional instability suggests that the child will have a difficult time finding someone willing to adopt the child, the child may nevertheless be considered adoptable if

"a prospective adoptive family has been identified as willing to adopt the child." (*Id.* at p. 1650.)

If a child is found to be generally adoptable, "the availability of prospective adoptive parents" is "irrelevant" and the juvenile court need not inquire into the suitability of a particular placement. (*Carl R., supra*, 128 Cal.App.4th at p. 1062.) "When a child is deemed adoptable only because a particular caretaker is willing to adopt, the analysis shifts from evaluating the characteristics of the child to whether there is any legal impediment to the prospective adoptive parent's adoption and whether he or she is able to meet the needs of the child." (*In re Helen W.* (2007) 150 Cal.App.4th 71, 80.)

The law does not require the juvenile court to find a dependent child "generally adoptable" or "specifically adoptable" before terminating parental rights. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1313.) All that is required is clear and convincing evidence of the likelihood that the child will be adopted within a reasonable time. (§ 366.26, subd. (c)(1); *In re Zeth S.* (2003) 31 Cal.4th 396, 406 (*Zeth S.*).)

In reviewing the juvenile court's adoptability finding, "'we determine whether the record contains substantial evidence from which a reasonable trier of fact could find clear and convincing evidence that [the child] was likely to be adopted within a reasonable time.'" (*In re Gregory A.* (2005) 126 Cal.App.4th 1554, 1561-1562.) "We give the court's finding of adoptability the benefit of every reasonable inference and resolve any evidentiary conflicts in favor of affirming." (*Id.* at p. 1562.)

III. **The adoptability finding was supported by substantial evidence**

The issue here concerns whether the juvenile court had sufficient evidence to support its finding that the children were

generally adoptable. Father argues that the evidence was lacking because the children have certain limiting physical and mental conditions, and the original prospective adoptive parents later decided not to adopt them. "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true," giving deference to the trial court's evidentiary findings. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.) After reviewing the record, we conclude that the court's finding was supported by clear and convincing evidence.

First, the children's ages do not provide grounds for finding they were not generally adoptable. Ah. was eight years old, Asa. was seven years old, Am. and Asi. were five years old, and Mi. was three years old. Father fails to identify any evidence in the record that shows their ages will make it difficult for any of the children to be adopted. Additionally, in *In re Elise K.* (1982) 33 Cal.3d 138, a 10-year-old was considered to be at the "turning point" of adoptability. Since all the children here were under 10, and short of the "turning point," their ages do not present a lack of substantial evidence of their adoptability.

Second, father also fails to identify any evidence showing each child had substantial mental or physical conditions that would prevent them from forming loving, trusting relationships with potential adoptive parents. Eight-year-old Ah. needed treatment for a physical ailment that caused her to walk on her toes. Asa., age seven, has asthma, a hard time focusing, and issues with his motor and personal skills. The five-year-old twins, Am. and Asi. have asthma, heart murmurs, developmental

delays, and are in therapy. Mi., age three, has asthma and developmental delays.

Disabilities alone are "not a bar to adoptability." (*In re J.W.* (2018) 26 Cal.App.5th 263, 265.) "Very few children in the dependency system are without problems." (*Id.* at p. 268.) No evidence in the record shows it will be difficult to find someone willing to adopt these children based on their physical and emotional needs.

On the contrary, the record contains ample evidence from which a reasonable fact finder could find it probable that the children are likely to be adopted within a reasonable time. They are young and their physical, behavioral, and mental health needs had improved by the time of the hearing. Therefore, their particular needs did not take them out of the realm of being "generally adoptable."

Third, the juvenile court had evidence that Mr. and Ms. G. wanted to adopt the children. "[A] prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*Sarah M., supra*, 22 Cal.App.4th at p. 1650.) This willingness to adopt by Mr. And Ms. G. provided the court with sufficient evidence to support its finding that the children were generally adoptable.

Despite father's argument that the finding was in error because, after the December 2021 hearing, the caregivers, Mr. and Ms. G., decided not to adopt the children, that fact does not undermine the court's finding of adoptability. As noted above, when a child is generally adoptable, the juvenile court need not inquire into the suitability of a particular placement. (*Carl R., supra*, 128 Cal.App.4th at p. 1062.) All that is required is clear and convincing evidence of the likelihood that the child will be

adopted within a reasonable time. (§ 366.26, subd. (c)(1); *Zeth S., supra*, 31 Cal.4th at p. 406.)

Based on the evidence here, including the children's ages, physical and mental conditions, and the interest of the prospective adoptive parents, we conclude that the juvenile court's finding of adoptability was supported by substantial evidence.

## IV. Postjudgment facts do not completely undermine the adoptability finding

Father also argues the failure of the adoptive placement following the December 2021 hearing is grounds to reverse because it completely undermines the juvenile court's findings. Given the general rule that "an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration," we must disagree with father. (*Zeth S., supra*, 31 Cal.4th at p. 405.)

The trial court decides questions of fact, and the appellate court decides questions of law. (*Zeth S., supra*, 31 Cal.4th at p. 405.) Review of juvenile dependency orders is governed by generally applicable rules of appellate procedure, with proper deference paid to the factual findings and uncontested rulings of the juvenile court, with all appropriate inferences to be drawn in favor of the judgment below. (*Ibid*.)

Therefore, "consideration of postjudgment evidence of changed circumstances in an appeal of an order terminating parental rights, and the liberal use of such evidence to reverse juvenile court judgments and remand cases for new hearings, would violate both the generally applicable rules of appellate procedure, and the express provisions of section 366.26 which strictly circumscribe the timing and scope of review of

termination orders, for the very purpose of expediting the proceedings and promoting the finality of the juvenile court's orders and judgment." (*Zeth S., supra*, 31 Cal.4th at p. 413.)

It is only in rare and compelling cases that postjudgment evidence may completely undermine the juvenile court's judgment under review, such as occurred in *In re B.D.* (2019) 35 Cal.App.5th 803. There, the mother asked the appellate court to consider additional evidence on appeal that the prospective adoptive parents had a history of criminal behavior and sexual abuse and that the child was physically abused and afraid of several people in the household, information that undermined the trial court's finding that the child was specifically adoptable by these parents because the child had high-needs and a history of mental instability that had to be managed with a regimen of psychotropic medication and intensive therapy. The court had found that the prospective parents understood the child's challenging circumstances and were committed to adopting him. On appeal, the parties stipulated that evidence after the termination of the parental rights undermined the juvenile court's findings that the child was likely to be adopted. Based on both the newly obtained information concerning the prospective adoptive parents and the parties' stipulation, the Court of Appeal reversed and remanded with instructions for the juvenile court to obtain updated information whether the child was likely to be adopted within a reasonable time.

The postjudgment evidence offered by father does not undermine the trial court's order under review. The juvenile court found the five children were generally adoptable, and the failure of the specific adoptive placement immediately after the hearing does not prove otherwise.

The evidence below shows that none of these children are high-needs, require a regimen of medication or intensive therapy, or have any other condition that makes them unlikely to be adopted. Although the children are not without problems, they are receiving and responding to services. The current caregivers have expressed a desire to obtain legal permanency or adoption for three of the children. Therefore, the postjudgment evidence does not completely undermine the trial court's finding that the children are likely to be adopted.

## DISPOSITION

The juvenile court's orders are affirmed.
NOT TO BE PUBLISHED.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.